UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| DAWN ANGIONE<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NATIONAL COUNSELING GROUP, INC.<br>and FRANCIS A. VIERA, JR. individually,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>Case No. 3:21-cv-00344 |

## COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

Plaintiff, by and through her counsel, the law firms of McGillivary Steele Elkin LLP and Burr & Smith, LLP, respectfully submits her collective action complaint on behalf of herself and all those similarly situated against the National Counseling Group, Inc. ("NCG") and Frank Viera (collectively, "Defendants"), and states as follows:

### PARTIES

1.　　Dawn Angione is a current employee of Defendants, and she brings this action as a collective action in accordance with 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") against Defendants on behalf of herself and all others similarly situated because of Defendants' unlawful deprivation of Plaintiff's and similarly situated individuals' rights to overtime compensation. Plaintiff seeks a declaratory judgment under 28 U.S.C. §2201 and compensation, damages, and other relief available under the FLSA, as amended, 29 U.S.C. §201, *et seq*.

2. Plaintiff has given her written consent to be a party plaintiff in this action. 29 U.S.C. §216(b). Plaintiff's written consent is appended to this Collective Action Complaint as Exhibit A.

3. Plaintiff brings this action for a declaratory judgment, back pay, liquidated damages and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331, to remedy Defendants' willful and unlawful violations of federal law complained of herein.

4. At all times material herein, Plaintiff, while employed by Defendants, was an "employee" within the meaning of the FLSA, *id.* § 203(e)(1).

5. Defendant NCG is an employer within the meaning of the FLSA, *id.* § 203(d). NCG's principal office and place of business is located at 5540 Falmouth Street #200, Richmond, VA, 23230. Its registered agent for service of process is Thomas F. Quinn, 1775 Wiehle Avenue, Suite 400, Reston, VA, 20190.

6. Defendant NCG meets the definition of an "enterprise engaged in commerce" under 29 U.S.C. § 203 (s)(1), as: (1) it has either employees engaged in commerce or the production of goods for commerce or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) it has a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

7. Defendant Francis A. Viera, Jr. ("Viera") is the President and Chief Executive Officer of NCG.  Viera is an employer of Plaintiff and similarly situated Therapeutic Day Treatment Counselors  ("TDTs" or "TDT Counselors") within the meaning of 29 U.S.C. § 203(d) because, upon information and belief: (1) he has ownership interest in NCG and its parent company, ncgCare, Inc.; (2) he has operational control over NCG and controls the terms and

conditions of Plaintiff's employment and that of other similarly situated TDT Counselors, including their classification as FLSA exempt or FLSA non-exempt, their compensation, and their hours worked; and (3) he has the ability to hire and fire employees.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10. NCG is a for-profit company that employs behavioral support workers for clients in schools and within communities. NCG is paid by Medicaid. NCG is headquartered in Richmond, Virginia and has approximately 22 office locations throughout the Commonwealth of Virginia. NCG assigns TDTs to work at specific schools and communities throughout Virginia.

11. At all times material herein, since May 2018, Plaintiff was employed by NCG in the position of Therapeutic Day Treatment Counselor until NCG changed the title of this position to "Mental Health Professional" in approximately November 2019. NCG has used various titles for the job that is described in Paragraph 14, below. While the title of TDT Counselor changed over time and throughout Plaintiff's employment, the job duties and responsibilities of the TDT job has remained the same.

12. At all times material herein, since May 2018, Plaintiff was assigned to NCG's Winchester, Virginia office, located at 817 Cedar Creek Grade, STE 202, Winchester, VA 22602.

13.     Through NCG's Therapeutic Day Treatment program, TDTs provide services, in both schools and homes in Virginia, that are designed to assist children and adolescents with emotional and behavioral issues.

14.     From approximately May 2018 until March 13, 2020, while working as a TDT in an elementary school in Virginia, Plaintiff's primary job duties were: greeting clients/students in the morning at school and taking attendance to ensure the clients/students are present in school; confirming clients/students are appropriately dressed and groomed (i.e., hair brushed, clothes clean, etc.); checking in on clients/students at least two times each day: once in the morning (for attendance) and once in the afternoon during the school day (to confirm they are still at school); walking the halls of their schools to make sure clients/students are in class and not being disruptive to the class; removing client/students from the classroom to work with them in a quieter setting if clients/students are disruptive to the class, or otherwise having a hard time paying attention to the teacher; holding individual or small group meetings with clients/students to talk about their day, any problems at home, problems in class, or to talk about things going on in their lives; planning activities and having lunch with clients/students; communicating with parents, teachers, school administrators, parole officers, department of children services, and health providers for the clients/students; reporting to their Clinical Supervisors and the proper individuals (such as police or school administrators) regarding safety concerns for the clients/students; documenting interactions with clients/students on a form called a Daily Progress Note accessed through a reporting software called Credible by the end of each 24-hour day; and completing additional reports on clients/students on a monthly, quarterly, or annual basis, including paperwork required for Medicaid payment authorization.

15. Within the last three years, TDTs employed by Defendants have performed similar job duties to Plaintiff as described in Paragraph 14.

16. Within the last three years, Defendants have had a policy of not paying Plaintiff and similarly situated TDTs overtime compensation at a rate of one and one-half times the regular rate of pay for all hours they work over 40 in a workweek of which Defendants' officers, managers and/or supervisors knew or should have known TDTs were working.

17. From May 2018 until approximately December 2019, Plaintiff worked approximately 55 hours each workweek performing the activities described in Paragraph 14, including supporting clients/students in school and/or in the community, completing daily documentation and other paperwork (*i.e.*, monthly, quarterly, and annual reports, and Medicaid authorization forms), sending and responding to emails and text messages, and calling her supervisor, students' parents, and other community members related to her interactions with students/clients. Each workday while schools were open (before the global pandemic due to COVID-19 caused school closures in March 2020), Plaintiff worked with students/clients in the manner described in Paragraph 14 during school hours (from approximately 7:45 a.m. to 3:30 p.m.) and then continued to work on daily documentation and communications with her supervisor, students' parents, teachers and other community members as well as work in the community for approximately, on average, two to four additional hours each workday. She also worked approximately, on average, two to five hours on weekends to complete additional paperwork.

18. Defendants had actual or constructive knowledge that Plaintiff and other similarly situated TDTs worked over 40 hours a week. Defendants required Plaintiff and other similarly situated TDTs to work the same hours as teachers at their assigned schools, which was typically

5

7.5 to 8 hours a day (37.5 to 40 hours a week).  Defendants were aware that in addition to hours worked at school, TDTs also spent hours each workweek in the community with students, completing required daily documentation, weekly reports, monthly reports, quarterly reports, and other required forms, and communicating with students, parents, teachers, administrators, providers, and other community members.  TDTs were required to be available to students and parents 24-hours a day and to respond to inquiries promptly after contact.  Defendants had the capability to keep track of Plaintiff's and other TDTs' hours worked, but did not.

19. Neither Plaintiff nor similarly situated TDTs were required to be Licensed Mental Health Professionals ("LMHPs") to be a TDT.  TDTs did not administer assessments or provide diagnoses to clients/students.  Plaintiff and all similarly situated TDTs reported directly to a Clinical Supervisor, who was supposed to be an LMHP, and the Clinical Supervisor performs the initial assessment of clients/students, diagnoses clients/students, and authorizes a plan of treatment for client/students.  Further, only Clinical Supervisors can approve a change to a plan of treatment or diagnosis for a client/student.

20. Plaintiff's job duties and those of similarly situated TDTs described in Paragraph 14 did not include the exercise of discretion and judgment with respect to matters of significance.

21. Plaintiff's and other TDTs' work has been closely monitored and is regularly reviewed by their supervisors, Clinical Supervisors.  Clinical Supervisors reviewed Plaintiff's and other TDT's Daily Progress Notes, which record general information and observations of clients/students, and Clinical Supervisors discussed these notes with TDTs weekly.  Clinical Supervisors reviewed all paperwork prepared by Plaintiff and similarly situated TDTs, such as Medicaid authorization forms, and monthly, quarterly, and annual reports.  Reports, like the

Daily Progress Notes, are completed on standardized forms and completing such forms, while time consuming, is routine and manual work.

22. Plaintiff's job duties and those of similarly situated TDTs described in Paragraph 14 did not require advanced knowledge customarily acquired by a prolonged course of study. Plaintiff learned to do the work of a TDT on the job and with the guidance and assistance of supervisors. Indeed, Plaintiff had no specialized education related to the mental health of children or adolescents prior to working for Defendants. When Plaintiff Angione began her employment with NCG, she was a "trainee" and had to work as a TDT-trainee for a certain number of supervised hours before the "trainee" designation was removed. As a TDT-trainee, Plaintiff was paid a salary and no overtime compensation for hours worked in excess of 40 hours a week.

23. Prior to November 2019, Defendants: (1) uniformly classified TDTs as "exempt" from the FLSA; (2) paid Plaintiff and all similarly situated TDTs a salary; (3) did not pay any overtime compensation for hours Plaintiff and all similarly situated TDTs worked in excess of 40 hours in a workweek; and (4) did not keep track of the work hours of Plaintiff and all similarly situated TDTs.

24. Around approximately November 24, 2019, Defendants uniformly changed all TDTs to FLSA "non-exempt" hourly employees (*i.e.*, paying them an hourly rate instead of salary) and changed the title of the job from TDT to Mental Health Professional. Even though the title of the job changed, Plaintiff and all similarly situated TDTs continued to perform the same job duties and responsibilities set forth in Paragraph 14 until schools closed due to the pandemic on March 13, 2020.

25. After November 24, 2019, Defendants continued to fail to pay overtime compensation at a rate of one and one-have times the regular rate of pay for hours worked over 40 in a workweek to Plaintiff and similarly situated TDTs. Specifically, Defendants did not compensate Plaintiff and similarly situated TDTs for all time spent completing documentation outside of the presence of clients/students and for travel between work sites, including for travel between school (when they were open) and between clients' homes.

26. NCG has referred to time worked by TDTs on documentation and travel as "indirect time" and has had a policy that indirect time should not exceed 20% of total time billed unless preapproved by a supervisor.

27. After Defendants' reclassification of Plaintiff and other TDTs to non-exempt hourly employees, Plaintiff continued to spend approximately, on average, two to five hours a week completing documentation, communicating with students, parents, and supervisors, and traveling between work sites (*i.e.*, indirect time) for which she was not properly paid.

28. Specifically, after Defendants uniformly changed all TDTs from salaried to hourly employees, and beginning in or around January 2020, Plaintiff continued to work approximately 42 to 45 hours a week and did not receive overtime pay for all hours in excess of 40, except from approximately March 13, 2020 to approximately May 2020, when schools were abruptly closed because of the COVID-19 pandemic and before work transitioned to telework, homes, and in the community.

## COLLECTIVE ACTION ALLEGATIONS

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28 in their entirety and restate them.

30. This action is an "opt-in" collective action pursuant to 29 U.S.C. § 216 (b) as to claims for declaratory relief, unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

31. The collective action includes all persons who were employed by Defendants in Virginia, who, within three-years preceding the filing of the Complaint and during the period the statute of limitations was tolled by agreement of the parties, performed work as a TDT for Defendants.[1]

32. The group of individuals on behalf of whom Plaintiff brings this collective action are similarly situated because: (1) they were or are employed in the same or similar positions as Plaintiff; (2) they had the same or similar duties as Plaintiff; (3) they were subject to the same or similar unlawful payment practices and/or policies as Plaintiff; and (4) they have claims based upon the same legal theories. These similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' records. They may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216 (b), for the purpose of collectively adjudicating their claims for declaratory relief, unpaid wages, overtime compensation, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

33. Plaintiff is representative of those other similarly situated employees and is acting on behalf of their interests as well as Plaintiff's own interests in bringing this action. Plaintiff will fairly and adequately represent and protect the interests of the members of the collective who opt into the case.

34. Defendants' failure to pay Plaintiff and the similarly situated persons their lawful overtime wages was and is willful. Defendants knew or should have known that their conduct

---

[1] By agreement of the parties, the FLSA overtime claims of Plaintiff Angione and other similarly situated TDTs who worked for NCG in Virginia were tolled from June 1, 2020 until May 24, 2021.

was unlawful under the FLSA and/or showed reckless disregard for the matter of whether their above-described conduct was prohibited by the FLSA.

## COUNT I

### FAILURE TO PAY OVERTIME FOR IN VIOLATION OF 29 U.S.C. § 207

35. Plaintiff hereby incorporates by reference paragraphs 1 through 34 in their entirety and restates them.

36. Section 7(a) of the FLSA provides that employees shall be paid overtime compensation at a rate of not less than one-and-one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

37. Defendants have violated the FLSA by failing and refusing to compensate Plaintiff, and all other similarly situated TDTs, at a rate of not less than one-and-one-half times their regular rate of pay in workweeks in which Plaintiff and all those similarly situated worked 40 or more hours per week. *Id.*

38. Defendants' violations of the FLSA have been done in a willful manner.

39. As a result of the Defendants' willful violations of the FLSA, there has become due and owing to Plaintiff, and all similarly situated TDTs, an amount of backpay that has not yet been precisely determined. Defendants maintain exclusive possession, custody, and control of the employment and work records for Plaintiff and those similarly situated to her, and Plaintiff is unable to state at this time the exact amount owing to her and all those similarly situated. The FLSA, as well as various other statutory and regulatory provisions, imposes a duty on Defendants to maintain and preserve payroll and other employment records with respect to Plaintiff and all other employees similarly situated from which the factfinder can ascertain the amount of Defendants' liability. *Id.* § 211(c).

40. Plaintiff and all those similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for Defendants' failure to pay overtime compensation. *Id.* § 216(b).

41. Plaintiff and all those similarly situated are entitled to recover attorneys' fees and costs. *Id.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of others similarly situated, pray that this Court:

(a) Enter judgment declaring that the Defendants have willfully and wrongfully violated their statutory obligations under federal law, and deprived Plaintiff and all those similarly situated of their rights;

(b) Order a complete and accurate accounting of all the compensation to which Plaintiff and all those similarly situated are entitled;

(c) Award Plaintiff and all those similarly situated compensatory relief in the form of liquidated damages equal to their unpaid overtime compensation;

(d) Award Plaintiff and all those similarly situated interest on their unpaid overtime compensation;

(e) Award Plaintiff and all those similarly situated their reasonable attorneys' fees to be paid by Defendants, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

/s/ Molly A. Elkin
Molly A. Elkin (Va. Bar No. 40967)
Hillary D. LeBeau*
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@mselaborlaw.com
hdl@mselaborlaw.com

Sam J. Smith*
Loren Bolno Donnell*
Burr & Smith LLP
9800 4th Street North, Suite 200
St. Petersburg, FL 33702
(813) 253-2010
SSmith@burrandsmithlaw.com
LDonnell@burrandsmithlaw.com

*Counsel for Plaintiff*


*Application for Admission
pro hac vice forthcoming*